[No. 12187–5–II. Division Two. June 6, 1990.]

THE STATE OF WASHINGTON, *Respondent,* v. BARRY
MASSEY, *Appellant.*

*James C. Buckley,* for appellant.

*John W. Ladenburg, Prosecuting Attorney,* and *Chris Quinn–Brintnall, Senior Appellate Deputy,* for respondent.

WIELAND, J.*—Barry Massey, a juvenile, appeals his aggravated first degree murder conviction. He argues that the juvenile court should have retained jurisdiction; that he was unable to intelligently waive his Fifth and Sixth Amendment rights prior to confessing; and that the testimony concerning his partner's confession and other crimes was improperly excluded. He also argues that there was insufficient evidence to support a conviction and that life without possibility of parole constitutes cruel and unusual punishment. We affirm.

On January 10, 1987, Paul Wang, owner of the Steilacoom Marina, was found dead at the marina. He had been shot twice, once in the stomach and head, and stabbed seven times. Witnesses informed the police officers that a white male and female were seen running from the area.

The Pierce County Sheriff's Department sent Officer Morrison to cover an escape route, with instructions to stop all traffic. She saw two vehicles leaving the area. Morrison realized that she could only stop one vehicle, and chose the closer, a truck. The truck contained a white 20–year–old male, and two black juveniles, 13–year–old Barry Massey and 15–year–old Michael Harris. After identifying the three occupants, Officer Morrison released Harris and the other person, but retained Massey, because he had been listed as a missing child, and placed him in her patrol car.

While waiting at her position, Officer Morrison observed a canine unit coming out of the woods; the canine began circling her patrol car. She moved her vehicle and the canine again circled the car. Officer Andrews, the canine handler, informed Officer Morrison that the assailants had been described as two black juveniles.

The officers examined Massey's shoe prints and concluded that the shoe prints matched those left at the crime scene. Massey was then read his *Miranda* rights, including the juvenile advisement, and placed under arrest. After his

---

*Judge Herbert E. Wieland is serving as a judge pro tempore of the Court of Appeals pursuant to CAR 21(c).

arrest, Massey told Officer Morrison that he was not involved in the homicide, but that he and Harris found the victim dead and decided to rob the store. Massey later volunteered the same information to Officer Hall.

Massey was transferred to Officer Hall's patrol car and transported to the police station. At the station, Massey was given his *Miranda* rights again. Massey waived his rights and then provided a recorded statement to Officer Hall indicating that he and Harris had committed the crime. During his statement, Massey said that he had never been "in juvenile" and asked if he was "going to jail for life." Massey also said they killed Wang because he could recognize Harris's face in a "mug book."

Harris was later arrested, and when taken back to the crime scene he provided the location of the gun used to perpetrate the murder.

The State charged Massey and Harris with aggravated first degree murder, first degree burglary, and first degree robbery.[1] The State made a motion in juvenile court for a declination of juvenile jurisdiction. Massey issued a subpoena to the prosecutor and moved to take the prosecutor's deposition to determine the basis for the motion. The juvenile court denied Massey's motion and quashed the subpoena.

In April 1987, the juvenile court held a declination hearing. Two psychologists testified that Massey had the mental age of a 9.9–year–old, a borderline I.Q. of 77, and was considered a slow learner. Massey's reading, spelling, and arithmetic levels were also below average. Massey was considered passive, conforming and accommodating, but had a high antisocial tendency. Based on the testimony, the juvenile court declined jurisdiction, determining that the tests were unreliable because they were based solely on information provided by Massey, and that Massey may have a

---

[1] The first degree burglary and first degree robbery charges arise from the gun used to kill the victim. The State alleged that Massey and Harris had stolen it from Martha Davis about 3 weeks before the murder.

"secret garden" within himself which harbors a very disturbed and dangerous individual.

The trial court severed Massey's superior court trial from Harris's trial. The trial court also severed the burglary and robbery charges.

Massey claimed that he was incompetent to stand trial. Upon the State's motion, the court compelled Massey to submit to an examination by a state psychologist to determine competency. After the hearing, the court determined that Massey was competent to stand trial.

Massey moved to suppress the statements he made to the two officers and to John Moore, who was both the Juvenile Program Coordinator and a family friend. The court found that Massey had knowingly, intelligently, and voluntarily waived his rights as to the statements made to the officers; however, the court suppressed the statements made to Moore because Massey may have been confused as to Moore's status as either the Juvenile Program Coordinator or family friend.

At trial, Massey attempted to elicit testimony from Melody Anderson concerning a confession made by Harris while incarcerated. The trial court sustained the State's objection, concluding that the statement was untrustworthy. The trial court also excluded evidence of Harris's other crimes, wrongs or acts.

The jury convicted Massey of aggravated first degree murder and he was sentenced to life imprisonment without the possibility of parole.

## A
### DECLINATION OF JUVENILE COURT JURISDICTION

■ Massey argues that the juvenile court erred in declining jurisdiction because he has a below average aptitude. We review the juvenile court's declination for abuse of discretion. *See* RCW 13.40.110(2); *State v. Toomey,* 38 Wn. App. 831, 834, 690 P.2d 1175 (1984), *review denied,* 103 Wn.2d 1012, *cert. denied,* 471 U.S. 1067 (1985).

A juvenile has no constitutional right to be tried in juvenile court. *State v. Hodges,* 28 Wn. App. 902, 904, 626 P.2d 1025 (1981). However, the State bears the burden of showing that the declination of juvenile jurisdiction would be in the best interest of the child or the public, by a preponderance of the evidence. *State v. Jacobson,* 33 Wn. App. 529, 531, 656 P.2d 1103 (1982).

The juvenile court should consider seven criteria[2] before declining jurisdiction. *Kent v. United States,* 383 U.S. 541, 16 L. Ed. 2d 84, 86 S. Ct. 1045 (1966); *State v. Holland,* 98 Wn.2d 507, 515, 656 P.2d 1056 (1983). The seven criteria need not all be met; rather, they are to direct the court's inquiry. *In re Burtts,* 12 Wn. App. 564, 575, 530 P.2d 709 (1975).

Massey has failed to assign error to any of the findings[3] of the juvenile court when it declined jurisdiction. As a result, we will treat them as verities. *See State v. Christian,* 95 Wn.2d 655, 656, 628 P.2d 806 (1981).

The juvenile court considered Massey's age and maturity and determined that there was a prima facie case of aggravated first degree murder, first degree robbery and first degree burglary. The court determined that the alleged

---

[2] Those criteria are as follows:

1. The seriousness of the alleged offense to the community and whether the protection of the community requires waiver.

2. Whether the alleged offense was committed in an aggressive, violent, premeditated or willful manner.

3. Whether the alleged offense was against persons or against property, greater weight given to offenses against persons especially if personal injury resulted.

4. The prosecutive merit of the complaint.

5. The sophistication and maturity of the juvenile as determined by consideration of his home, environmental, situation, emotional attitude and pattern of living.

6. The record and previous history of the juvenile.

7. The prospects for adequate protection of the public and the likelihood of reasonable rehabilitation of the juvenile by the use of procedures, services and facilities currently available to the juvenile court. *See State v. Holland,* 98 Wn.2d 507, 515 n.2, 656 P.2d 1056 (1983).

[3] Contrary to Massey's argument, the findings are sufficient for review.

offenses were aggressive, violent and premeditated or willful and committed against largely helpless people. Although the psychological and treatment reports recommended retention of juvenile jurisdiction, the court determined that those recommendations were predicated on unreliable information provided by Massey[4] and unsupported by substantial evidence.

Massey argues that his below average aptitude required the juvenile court to retain jurisdiction. However, Massey's mental ability is only one factor, which must be balanced against the other factors including the seriousness of the crime, the prospects for adequate protection of the public and the likelihood of reasonable rehabilitation. The juvenile court properly balanced those factors, and, therefore, its conclusion to decline jurisdiction was not an abuse of discretion.

Massey next argues that the prosecutor abused his discretion by implementing a mandatory policy of seeking a declination hearing in juvenile cases involving first degree murder. In *State v. Pettitt,* 93 Wn.2d 288, 609 P.2d 1364 (1980), the court determined that a "fixed formula which requires a particular action *in every case* upon the happening of a specific series of events constitutes an abuse of the [prosecutor's] discretionary power . . .". *Pettitt,* 93 Wn.2d at 296. The trial court found that there was "no evidence that the prosecuting attorney abused its discretion in deciding to file a motion for declination." We review that finding for substantial evidence. *State ex rel. Slusser v. Billet,* 52 Wn. App. 561, 563, 762 P.2d 350 (1988), *review denied,* 111 Wn.2d 1032 (1989). The State offered evidence, that was admitted by the trial court, that a declination hearing was not sought by its office in a first degree murder case involving a 12½–year–old defendant. As a result, there

---

[4]Massey's psychological evaluation concluded that he was an unwitting and passive participant. However, the evaluation was predicated on Massey's own responses. Because Massey also had a high deception scale and antisocial tendencies, the court determined that the evaluations were not reliable.

was substantial evidence supporting the finding that the prosecutor did not have a mandatory policy for seeking declination for first degree murder.

■ Massey argues that the trial court erred in quashing his subpoena to take the prosecutor's deposition to determine the basis for the declination motion. We also review that decision for an abuse of discretion. *State v. Hamilton,* 24 Wn. App. 927, 935–36, 604 P.2d 1008 (1979). A defendant issuing a subpoena to a deputy prosecuting attorney must make an offer of proof showing that the testimony is necessary and is not privileged, repetitious, or cumulative, and that the testimony is relevant and material to the theory of the case. *See State v. Stiltner,* 61 Wn.2d 102, 377 P.2d 252 (1962), *cert. denied,* 380 U.S. 924, 13 L. Ed. 2d 810, 85 S. Ct. 928 (1965). Massey did not make an offer of proof setting forth what evidence would have been obtained from the prosecutor. As a result, the trial court did not abuse its discretion in quashing the subpoena.

## B
### PRETRIAL MATTERS
### 1. Reasonableness of the Investigative Stop

■ Massey argues that Officer Morrison illegally stopped and detained him. Massey filed a motion to exclude "any and all evidence obtained as a result of an illegal arrest of defendant." Clerk's Papers, at 12. However, the record does not appear to contain any indication that Massey pursued the motion with further argument. Since Massey raised the issue but failed to pursue it, we deem the argument waived or abandoned. *See State v. Valladares,* 31 Wn. App. 63, 75–76, 639 P.2d 813 (1982) (Although an issue of constitutional magnitude may be first raised on appeal pursuant to RAP 2.5(a)(3), that right may be waived or abandoned by withdrawing the motion.), *aff'd in part, rev'd in part,* 99 Wn.2d 663, 664 P.2d 508 (1983).

■ Nevertheless, the ultimate test for an investigative stop is reasonableness, which involves balancing the degree to which the stop invades the personal liberty of the

defendant against the public interest to be advanced. *State v. Hobart,* 94 Wn.2d 437, 443, 617 P.2d 429 (1980). Massey argues that witnesses described an adult, white, male and female as the victim's assailants, which is inconsistent with Massey's or Harris's description.

The canine track identified the alleged assailants' scent along the railroad tracks. The only route leading away from the tracks was the area of Union and Cormorant. Officer Morrison was then stationed at that location, which is where she stopped the truck[5] containing Massey. Also, the vehicle contained a white male, consistent with the witness's statement. Those facts amount to a suspicion of criminal activity, and coupled with the minimal invasion of obtaining the occupants' identification, make the investigative stop lawful.

### 2. Compelled Competency Examination

Massey challenged his competency to understand the proceedings against him and to understand his constitutional rights. He offered the testimony of psychologists to support his claim. The State asked the trial court to require that Massey submit to a state psychological examination, which the court ordered. Massey argues that being compelled to submit to a mental evaluation denied him of his Fifth Amendment privilege against self–incrimination and his Sixth Amendment right to assistance of legal counsel since Massey's counsel was not allowed to object during the exam.

Massey has failed to provide any citation to the record that would indicate that the psychologist asked Massey any question that required an incriminating answer. Massey also fails to provide any citation to the record indicating that improperly obtained information was disclosed at trial.

---

[5]Massey appears to argue that failure to stop the "beater" car that preceded the truck makes the investigative stop arbitrary. However, Officer Morrison testified that she was unable to stop both vehicles so she chose the closer one. As a result, her decision was not arbitrary.

RAP 10.3(a)(5) requires the parties to support their arguments with reference to the record. Having failed to satisfy that requirement, we find that Massey's constitutional rights were not violated.

### 3. Waiver of Fifth and Sixth Amendment Rights

After Massey received his *Miranda* warnings, the juvenile advisement and an opportunity to have a parent present, he made a statement to Officer Morrison (the arresting officer) and Officer Hall (the transport officer). Massey argues that he did not knowingly, intelligently, and voluntarily waive his Fifth and Sixth Amendment rights. The trial court concluded that Massey understood each provision of his rights, but the court failed to enter written findings and conclusions pursuant to CrR 3.5(c). Although we need to know the basis for the trial court's ruling to perform an adequate review, we find sufficient guidance in the oral opinion.[6]

The State has the burden of showing the waiver was knowing, voluntary and intelligent. *State v. Ellison,* 36 Wn. App. 564, 571, 676 P.2d 531 (1984). The test for waiver is a "totality of the circumstances" test. *Dutil v. State,* 93 Wn.2d 84, 87, 606 P.2d 269 (1980). The court should consider the defendant's age, experience, education, background, intelligence, his capacity to understand the warnings, the nature of the Fifth Amendment rights, and the consequences of waiving those rights. *Fare v. Michael C.,* 442 U.S. 707, 725, 61 L. Ed. 2d 197, 99 S. Ct. 2560 (1979).

The statement made to the arresting officer was spontaneous, and not in response to a question. As such, it should be considered voluntary. *State v. Ortiz,* 104 Wn.2d 479, 484, 706 P.2d 1069, *cert. denied,* 476 U.S. 1144 (1985). Although the recorded statement given to the transport

---

[6]When CrR 3.5 has not been observed, the appellate court may examine the record and make its own determination of voluntariness. *State v. Hoyt,* 29 Wn. App. 372, 379, 628 P.2d 515 (1981); *State v. Vickers,* 24 Wn. App. 843, 846, 604 P.2d 997 (1979).

officer was not spontaneous, but rather the product of custodial interrogation, it nevertheless was also voluntary, because Massey was not compelled to provide the information, even though he may have been influenced by the officer's position of authority. The fact that Officer Hall requested that Massey tell the truth is not of itself coercive.

The remaining question is whether the waiver was made intelligently. Massey argues that his low score on the aptitude tests, coupled with his age and passivity, make an intelligent waiver impossible. A mental subnormality does not automatically render a confession inadmissible, but it is considered a factor. *Ortiz*, 104 Wn.2d at 484. The record indicates that Massey was aware of the serious nature of the crime and its consequences when he asked whether he would receive life in prison, and demonstrated some familiarity with a "mug book" and juvenile detention. Therefore, Massey made an intelligent waiver.

## C
### TRIAL ISSUES
### 1. Admissibility of Harris's Confession

Massey's accomplice, Harris, confessed to Melody Anderson that he killed Wang and that Massey was not involved. Massey attempted to have Anderson testify to Harris's confession to show Harris's intent that Massey share in his sentence and as hearsay for the truth of the matter asserted. Hearsay may be offered if it falls within of the exceptions. ER 804(b)(3) provides in pertinent part as follows:

> . . . A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

There are nine factors[7] by which a court determines trustworthiness. *State v. Anderson*, 107 Wn.2d 745,

---

[7]Those factors are as follows:
1. Whether the declarant had an apparent motive to lie;
2. Whether the general character of the declarant suggests trustworthiness;
3. Whether more than one person heard the statements;

750, 733 P.2d 517 (1987). The trial court considered those factors and concluded that the statements were not admissible because they went to Harris's state of mind, which is not in issue, that the statements were untrustworthy, and that Harris was bragging. We review that decision for an abuse of discretion. *State v. Rowe*, 77 Wn.2d 955, 957, 468 P.2d 1000 (1970).

There is evidence to indicate that Harris had a motive to lie because he wanted to impress a fellow inmate; Harris is not known for his general trustworthiness, and Harris had no reason to expect Anderson's complicity in revealing the statement, which gives more support to the bragging theory. As a result, the trial court did not abuse its discretion in considering the testimony untrustworthy and excluding it.

## 2. Admissibility of Harris's Other Crimes, Wrongs or Acts

Massey sought to admit evidence of Harris's character to show that Harris committed the murder and that Massey was merely an innocent spectator, present only as a result of duress. ER 404(b) provides as follows:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

■ Admission of Harris's prior bad acts for the purpose of establishing a defense of duress is not supported by

---

4. Whether the statements were made spontaneously;

5. Whether the timing of the statements and the relationship between the declarant and the witness suggest trustworthiness;

6. Whether the statements contain express assertions of past fact;

7. Whether cross examination could not help to show the declarant's lack of knowledge;

8. Whether the possibility of the declarant's recollection being faulty is remote; and

9. Whether the circumstances surrounding the statements give no reason to suppose that the declarant misrepresented the defendant's involvement.

any of the listed exceptions. Therefore, the trial court did not abuse its discretion in excluding the evidence.

### 3. Admissibility of Expert Opinion Concerning Massey's Ability To Waive His Constitutional Rights

Massey argues that the trial court erred in not permitting his expert to testify at the suppression hearing to Massey's mental state and capacity on the date of the murder. ER 702 provides as follows:

> If scientific, technical, or other specialized knowledge *will assist the trier of fact* to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

(Italics ours.)

The trier of fact at the CrR 3.5 suppression hearing was the trial judge and not a jury. The judge, as the trier of fact, determined that the expert testimony would not assist him in rendering a decision and, therefore, did not abuse his discretion in excluding it.

### D
### POSTTRIAL ISSUES
### 1. Jury Selection System

Massey argues that this state's method of determining juror eligibility, which excludes 13–year–old juveniles, denies him of his constitutional right to a jury comprised of a fair cross section of the community. A criminal defendant is entitled to a jury comprised of a fair cross section of the community. *Taylor v. Louisiana,* 419 U.S. 522, 528, 42 L. Ed. 2d 690, 95 S. Ct. 692 (1975). In this state, the pool of jurors is collected from the election and tax rolls. RCW 2.36.070. As a result, juveniles are not allowed to serve as jurors. However, the United States Constitution does not forbid the states from prescribing relevant qualifications for their jurors, including age. *Carter v. Jury Comm'n,* 396 U.S. 320, 332, 24 L. Ed. 2d 549, 559, 90 S. Ct. 518 (1970). Therefore, Massey had no right to

have 13–year–old jurors and was not denied a jury comprised of a fair cross section of the community.

## 2. Sufficiency of the Evidence

 Massey argues that the evidence was insufficient to show premeditation. *See State v. Bingham,* 105 Wn.2d 820, 719 P.2d 109 (1986). In determining whether there is sufficient evidence as a matter of law to support the jury verdict this court must determine whether any rational trier of fact, weighing all the inferences in favor of the State, could have found the essential elements of the crime beyond a reasonable doubt. *State v. Green,* 94 Wn.2d 216, 616 P.2d 628 (1980). However, "[t]he planned presence of a weapon necessary to facilitate a killing has been held to be adequate evidence to allow the issue of premeditation to go to the jury." *Bingham,* 105 Wn.2d at 827. In this case, the evidence indicates that Massey had the gun prior to entering the marina. Therefore, sufficient evidence exists to show premeditation.

## 3. Sentencing

 Massey argues that his sentence of life imprisonment without the possibility of parole constitutes cruel and unusual punishment when applied to a 13–year–old.[8] The test is whether in view of contemporary standards of elemental decency, the punishment is of such disproportionate character to the offense as to shock the general conscience and violate principles of fundamental fairness. *Coker v. Georgia,* 433 U.S. 584, 53 L. Ed. 2d 982, 97 S. Ct. 2861 (1977). That test does not embody an element or consideration of the defendant's age, only a balance between the crime and the sentence imposed. Therefore, there is no cause to create a distinction between a juvenile and an adult who are sentenced to life without parole for first degree aggravated murder. Furthermore, the juvenile

---

[8]A sentence of life imprisonment without the possibility of parole imposed upon an adult for aggravated first degree murder is not cruel and unusual punishment. *State v. Forrester,* 21 Wn. App. 855, 587 P.2d 179 (1978).

court's consideration at declination accounts for the dispar-
ity between juvenile and adult sentencing, and in this case
the court elected for adult sentencing because the juvenile
penalties were insufficient.
Affirmed.

ALEXANDER, C.J., and WORSWICK, J., concur.