**Michael E. HARRIS, Petitioner–Appellant,**

v.

**Robert WRIGHT, Superintendent, Clallam Bay Correction Center, Respondent–Appellee.**

No. 94–35365.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 6, 1995.

Decided Aug. 19, 1996.

Cynthia M. Boersma, William I. Lee, Tacoma, Washington, for petitioner-appellant.

Christine O. Gregoire, Attorney General, Paul D. Weisser, Assistant Attorney General, Olympia, Washington, for respondent-appellee.

Before: PREGERSON, KOZINSKI and LEAVY, Circuit Judges.

KOZINSKI, Circuit Judge.

The principal question presented is whether a fifteen-year-old murderer may be sentenced to mandatory life imprisonment without possibility of parole.

## I

One afternoon in 1987, Michael Harris, age 15, and Barry Massey, age 13, went to Paul Wang's store to rob it. ER at 8, 10, 13 (Washington Superior Court Memorandum Decision). Along the way, the two discussed how to use the pistol Harris had brought along. Massey proposed that Harris simply walk in and shoot Wang; instead, Harris gave Massey the gun. *Id.* at 14. Shortly thereafter, Massey and Harris entered the store and Massey shot and stabbed Wang to death. *Id.* at 13–15. The two then cleaned out the cash register, took assorted merchandise and left. *Id.* at 14–15. Harris was arrested later that day. After he was advised of his rights, and without asking to see a lawyer or anyone else, he confessed. *Id.* at 12–17.

The Washington Juvenile Court declined jurisdiction, *id.* at 1–6, and Harris was convicted of aggravated first degree murder, *id.* at 27. The state didn't seek death and Harris received the only other sentence Washington law allows for his crime: life imprisonment without possibility of parole. *Id.* at 34; *see* Wash. Rev.Code § 10.95.030.[1] His conviction was affirmed on direct appeal and petitions for review and certiorari were denied by the Washington Supreme Court and the United States Supreme Court, respectively. *See* E.R. at 45–46. The Washington Court of Appeals then denied a personal restraint petition, *id.*, and the Washington Supreme Court again denied review, *id.* at 47–48. Harris followed up with a petition for a federal writ of habeas corpus which the district court denied.

Harris's petition raised the two constitutional challenges that are now before us: He

---

1. Massey was convicted of the same crime and received the same sentence. *See State of Washington v. Massey,* 60 Wash.App. 131, 803 P.2d 340, 344, *review denied,* 115 Wash.2d 1021, 802 P.2d 126 (1990), *cert. denied,* 499 U.S. 960, 111 S.Ct. 1584, 113 L.Ed.2d 648 (1991).

claims that a mandatory sentence of life imprisonment without parole is unconstitutionally cruel and unusual as applied to punish an offense committed when the perpetrator was less than sixteen years of age. Harris's Opening Br. at 7.[2] He also challenges the interrogation that led to his confession, arguing that a minor is denied due process when police interrogate him before notifying a parent of his arrest. *Id.* at 26.

## II

█ We first address Harris's Eighth Amendment challenge. The amendment has two possible applications here. A punishment is unconstitutional if the "evolving standards of decency that mark the progress of a maturing society" soundly reject it. *Trop v. Dulles,* 356 U.S. 86, 101, 78 S.Ct. 590, 598, 2 L.Ed.2d 630 (1958) (Opinion of Warren, C.J.). The Eighth Amendment also bars, under certain circumstances, punishments that are grossly disproportionate to the crime being punished. *See Harmelin v. Michigan,* 501 U.S. 957, 997–98, 111 S.Ct. 2680, 2702–03, 115 L.Ed.2d 836 (1991) (Kennedy, J., concurring); *United States v. Bland,* 961 F.2d 123, 128–29 (9th Cir.), *cert. denied,* 506 U.S. 858, 113

S.Ct. 170, 121 L.Ed.2d 117 (1992) (Justice Kennedy's *Harmelin* concurrence was holding of the Court).

### A

█ To establish that evolving standards of decency preclude his punishment, Harris bears the "heavy burden," *Stanford v. Kentucky,* 492 U.S. 361, 373, 109 S.Ct. 2969, 2977, 106 L.Ed.2d 306 (1989), of showing that our culture and laws emphatically and well nigh universally reject it. *See id.* at 369–71, 109 S.Ct. at 2974–76.[3] The most important indicators of the nation's penal sentiments are the enactments of its elected legislatures. *See id.* at 370, 109 S.Ct. at 2975.

At very least, then, Harris bears the burden of proving a strong legislative consensus against imposing mandatory life without parole on offenders who commit their crimes before the age of sixteen. Harris manages to cite[4] two states whose laws explicitly preclude mandatory adult sentences in general or life without parole in particular for crimes committed below sixteen,[5] two state high courts that prohibit mandatory life terms for

2. Harris doesn't challenge the constitutionality of his conviction. Thus, we need not consider whether, and when, a child can be too young to be constitutionally convicted of any crime.

3. Inexplicably, Harris expects us to follow the five-part test advanced by Justice Brennan's concurrence in *Furman v. Georgia,* 408 U.S. 238, 282, 92 S.Ct. 2726, 2748, 33 L.Ed.2d 346 (1972), to determine whether his punishment comports with the "dignity of man." Harris's Opening Br. at 6–16. Neither we nor the Supreme Court have done anything to encourage this expectation. Justice Brennan's concurrence remains just that.

4. Harris cites these statistics in his disproportionality, rather than *Trop,* analysis. Because, in this case, they're relevant only to the *Trop* analysis, we consider them here.

5. *See* Ind.Code § 35–50–2–3 (no life without parole for crimes committed under age 16); Or. Rev.Stat. § 161.620 (no life imprisonment for juveniles waived from juvenile court). Harris incorrectly lists another four states. One is a simple error: Harris incorrectly cites Tenn.Code Ann. § 39–13–204(i)(1) as precluding life without parole for offenses committed under the age of

eighteen. The subsection he cites has nothing to do with that subject. Tennessee law apparently allows adult trials for certain major offenses, including murder, committed below the age of sixteen, *see* Tenn.Code Ann. § 37–1–134(a)(1). Aside from capital punishment, *id.,* it doesn't appear to have any special sentencing provisions for minors. Three other states cited by Harris have recently changed their laws to allow adult sentencing for offenses committed under sixteen. California's laws now render a murderer over the age of fourteen presumptively unfit for juvenile adjudication, *see* Cal. Welf. & Inst.Code § 707(e), and prohibit commitment to the Youth Authority after conviction if the adult sentence imposed would last beyond the convict's twenty-fifth birthday, *see id.* § 1732.6. Nebraska generally allows a juvenile tried and convicted as an adult to be sentenced under the juvenile code. *See* Neb.Rev.Stat. § 29–2204(3). Last year, however, it created an exception to this rule in the case of mandatory life sentences. *See id.* The standards of decency in New Mexico have also devolved of late. Although it generally allows a court to impose a juvenile sentence even after a juvenile has been convicted as an adult, *see* N.M. Stat. Ann. § 32A–2–20, this option no longer applies to fifteen- to eighteen-year-old first degree murderers, *see id.* §§ 32A–2–3(H); 32A–2–20.

such crimes,[6] and twenty-six states that don't punish any crime with mandatory life without parole. On the other side, Harris admits there are at least twenty-one states that do impose mandatory life without parole on fifteen-year-old offenders.[7] Whatever degree of consensus might be necessary before we could overturn the considered judgment of a state legislature, this doesn't come close. *See Stanford,* 492 U.S. at 370–71, 109 S.Ct. at 2975–76 (no consensus where majority of states imposing punishment allowed it in defendant's circumstances).[8]

## B

An otherwise valid, if severe, punishment may nonetheless be unconstitutional when paired with a sufficiently minor crime. *See Harmelin,* 501 U.S. at 996–98, 111 S.Ct. at 2702–03 (Kennedy, J., concurring). Disproportion analysis, however, is strictly circumscribed; we conduct a detailed analysis only in the "rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." *Id.* at 1005, 111 S.Ct. at 2707 (Kennedy, J., concurring).

Harris admits, as he must, that his case couldn't have passed the threshold had he committed the crime when he was one year older. Harris was sentenced to a prison term for committing aggravated first-degree murder, the most serious crime under Washington law. The Supreme Court has declared that life imprisonment without possibility of parole for possession of 24 ounces of cocaine raises no inference of gross disproportionality. *See id.* at 1004–05, 111 S.Ct. at 2706–07 (Kennedy, J., concurring). A fortiori, it would raise none here. *See also Solem v. Helm,* 463 U.S. 277, 290 n. 15, 103 S.Ct. 3001, 3009 n. 15, 77 L.Ed.2d 637 (1983) ("no sentence of imprisonment would be disproportionate" to felony murder).

Relying on the plurality opinion in *Thompson v. Oklahoma,* 487 U.S. 815, 833–34, 108 S.Ct. 2687, 2698, 101 L.Ed.2d 702 (1988) (Stevens, J.) (Constitution recognizes "the special mitigating force of youth"), Harris argues that his tender age made him constitutionally less culpable and that his crime is, thus, less weighty than it would be otherwise. In essence, he invites us to decide that his sentence would be grossly disproportionate to a fifteen-year-old's limited culpability for *any* crime. Justice O'Connor's concurrence in *Thompson* rejected that notion, refusing to "substitute our inevitably subjective judgment about the best age at which to draw a line … for the judgments of the Nation's legislatures." *See Thompson,* 487 U.S. at 853–54, 108 S.Ct. at 2708–09 (O'Connor, J., concurring). Under *Marks v. United States,* 430 U.S. 188, 193, 97 S.Ct. 990, 993–94, 51 L.Ed.2d 260 (1977), Justice O'Connor's concurrence is the holding of *Thompson,* since it was the "position taken by those Members who concurred in the judgment[ ] on the narrowest grounds." Washington's legislature has decided that the appropriate punishment for anyone tried and convicted as an adult for aggravated murder is life in prison. The Constitution gives us no power to reverse its judgment.

Harris argues that, at very least, we must draw an inference of gross disproportionality when society imposes its "penultimate" punishment for a crime committed at fifteen. But, capital punishment aside, there's no constitutional (or rational) basis for classifying punishment in distinct, ordinal categories. As the Supreme Court noted in *Harmelin,* 501 U.S. at 996, 111 S.Ct. at 2702, if we put mandatory life imprisonment without parole into a unique constitutional category, we'll be hard pressed to distinguish mandatory life with parole; the latter is nearly indistin-

---

**6.** *See Workman v. Commonwealth,* 429 S.W.2d 374 (Ky.1968); *Naovarath v. State,* 105 Nev. 525, 779 P.2d 944 (1989).

**7.** *See* Appellant's Opening Br. at 19–22 nn. 6–8.

**8.** Harris suggests we remand for the district court to determine whether these states actually apply the punishment to eligible fifteen-year-olds so infrequently as to raise an inference that they

reject it in fact. *See* Appellant's Opening Br. at 20 nn. 10, 21. Harris forgets, however, that he bore the burden of proof on this issue. As he doesn't contend the district court prevented him from making such a showing or that it refused to consider evidence that would have raised a genuine issue of material fact, we decline his suggestion.

guishable from a very long, mandatory term of years; and that, in turn, is hard to distinguish from shorter terms. Youth has no obvious bearing on this problem: If we can discern no clear line for adults, neither can we for youths. Accordingly, while capital punishment is unique and must be treated specially, mandatory life imprisonment without parole is, for young and old alike, only an outlying point on the continuum of prison sentences. *See id.* at 995–96, 111 S.Ct. at 2701–02. Like any other prison sentence, it raises no inference of disproportionality when imposed on a murderer.

## C

 Harris also argues that the Washington statute under which he was sentenced is unconstitutionally vague because it doesn't specify a minimum age for its imposition. In *Thompson,* Justice O'Connor refused to presume that Oklahoma's legislature intended to allow the death penalty for murders committed by a fifteen-year-old where its statutes didn't explicitly set any minimum age for capital punishment. *See* 487 U.S. at 856–59, 108 S.Ct. at 2710–12. She premised her opinion, however, on strong evidence of a national consensus against imposing the death penalty for crimes committed before the age of sixteen, and on the special scrutiny the Constitution accords capital punishment. *See id.* at 856–58 & n. *, 108 S.Ct. at 2710–11 & n. *. Under the circumstances, "there [was] a considerable risk that the Oklahoma Legislature either did not realize that [allowing fifteen-year-olds to be tried as adults] would have the effect of rendering fifteen-year-old defendants death eligible or did not give the question serious consideration," *id.* at 857, 108 S.Ct. at 2711, and that risk had constitutional importance.

Here, there's no evidence of a consensus against mandatory life without parole for fifteen-year-olds, and we don't subject life imprisonment without parole to the same searching scrutiny we apply to capital punishment. *See Harmelin,* 501 U.S. at 994–95, 111 S.Ct. at 2701–02. Where the question isn't life or death, the Constitution doesn't require the state to prove its legislature contemplated each specific application of clearly phrased, general laws.

## III

 Harris next argues that his confession should have been excluded because the police took it before notifying his father that he had been arrested.[9] The circumstances of his interrogation and confession are, indeed, troubling. When the police brought Harris to the stationhouse, they had his father's telephone number at hand. Pretrial Hearings Transcript (PRT) at 111 (Testimony of Officer Tim Kobel). By the time they got around to using it, however, Harris, at times crying and shaking, had waived his rights in writing, confessed his crime on tape and led the police to the murder weapon; five hours had passed and the time was 1 a.m. The only excuse the police gave for this unsavory conduct would hardly reassure parents concerned with protecting the interests of their children: "Parents oftentimes will not enhance interrogation." *Id.* at 185 (Testimony of Officer Marcia K. Barnhill).

Citing *In re Gault,* 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), and *United States v. Doe,* 701 F.2d 819 (9th Cir.1983) (distinguishing *Gault* ), Harris claims that the intentional delay in notifying his father violated due process. *Gault* differs significantly from the case before us, however, because it concerned the right to notice of

9. Defendant doesn't contend that the police coerced either his *Miranda* waiver or his confession. We thus need not decide under what circumstances purposefully isolating a juvenile suspect from his parents might require a determination of whether the resulting confession is voluntary under the totality of the circumstances. *See Colorado v. Connelly,* 479 U.S. 157, 167, 107 S.Ct. 515, 521–22, 93 L.Ed.2d 473 (1986) (courts need not inquire into voluntariness absent coercive police activity); *cf. Chambers v. Florida,* 309 U.S. 227, 238–39, 60 S.Ct. 472, 477–78, 84 L.Ed. 716 (1940) (week of isolation and questioning coercive); *Gallegos v. Colorado,* 370 U.S. 49, 53–55, 82 S.Ct. 1209, 1212–13, 8 L.Ed.2d 325 (1962) (five days of isolating fourteen-year-old from mother or other adult coercive); *Derrick v. Peterson,* 924 F.2d 813, 819 (9th Cir.) (failure of police to contact relatives who had apparently witnessed defendant arrested for murdering his parents noncoercive where defendant didn't request that they contact anyone), *cert. denied,* 502 U.S. 853, 112 S.Ct. 161, 116 L.Ed.2d 126 (1991).

judicial proceedings. *See Gault*, 387 U.S. at 33–34, 41, 87 S.Ct. at 1446–47, 1451. Its holding thus rested on the fundamental proposition that the state may not hold judicial proceedings concerning a defendant's liberty unless it gives him enough notice of the proceedings and the charges against him to afford him a meaningful opportunity to prepare his defense. *See Gault*, 387 U.S. at 33–34, 87 S.Ct. at 1446–47; *Hovey v. Elliott*, 167 U.S. 409, 416, 17 S.Ct. 841, 844, 42 L.Ed. 215 (1897); *see also Kreck v. Spalding*, 721 F.2d 1229, 1232–33 (9th Cir.1983) (invalidating vague charging document requiring accused to guess the crime against which he must defend). As the proceedings in *Gault* concerned the disposition a juvenile's freedom, the Court held that "his parents' right to his custody are at stake," *Gault*, 387 U.S. at 34, 87 S.Ct. at 1447, entitling them to notice as well.

█ Harris urges us to extend *Gault*'s parental notice requirement to police interrogations. He points out, correctly, that much can happen during interrogation that will prejudice a defendant's case. Here, for instance, Harris stood as good as convicted by the time he had confessed to the police and helped them find the gun. *Gault*, however, isn't premised on the mere potential for prejudice; it turns on the certainty that the proceeding will result in a binding decision that will affect the defendant's liberty.[10] Due process protects the right to make an effective case against deprivation by the government, not the right against involuntary self-prejudice. The latter right is generally called the right against self-incrimination and is protected by the *Miranda* litany and the prohibition against admitting involuntary confessions.

*Gault*, thus, doesn't apply to police interrogation for the simple reason that an interrogation can have no effect on a person's liberty without his consent. Unlike a judicial proceeding, where a judge has the "intention ... to proceed to pronounce the judgment," *Hovey*, 167 U.S. at 416, 17 S.Ct. at 844 (citations omitted), a police interrogation decides nothing. If the suspect feels unprepared, he may stand mute and will be no worse off. In sharp contrast to a trial, for instance, where the defendant can be convicted whether or not he chooses to take the stand, an interrogation with a silent suspect necessarily ends without any change in the status quo.

**AFFIRMED.**

PREGERSON, Circuit Judge, dissenting:

I dissent.

On appeal Harris, in my view, makes a persuasive argument that Washington's aggravated murder statute is unconstitutionally ambiguous because it does not evince the legislature's clear intent to impose a mandatory sentence of life without the possibility of parole on juveniles under the age of 16. Harris argues that even though a Washington statute, R.C.W. 13.40.110, provides that some 15–year olds may be channeled into the adult criminal justice process, that statute alone does not constitute the Washington legislature's affirmative endorsement of a mandatory sentence of life imprisonment without the possibility of parole for juvenile convicts under the age of 16.

In *Thompson v. Oklahoma*, 487 U.S. 815, 826 n. 24, 850, 108 S.Ct. 2687, 2694 n. 24, 2707, 101 L.Ed.2d 702 (1988), the Supreme Court rejected the state's argument that when a juvenile is deemed fit to stand trial as an adult, he is also subject to all adult penalties. The Court stated that when a legislature allows juveniles to be processed through the adult criminal justice system "it does not necessarily follow that the legislature ... deliberately concluded that it would be appropriate to impose capital punishment on [juveniles]." *Id.* at 850, 108 S.Ct. at 2707. The Court explained that the limited capacity of the juvenile system to rehabilitate serious juvenile offenders did not render those juveniles death-eligible. *Id.*

Under R.C.W. 13.40.110, the Washington juvenile court has the discretion to decline jurisdiction over juvenile offenders. In exer-

---

**10.** We don't exclude proceedings, such as pretrial hearings, where the defendant's liberty isn't immediately at stake. Any court proceeding differs from an interrogation in that it may produce a binding decision that in some way directly affects the defendant's case.

cising that discretion, the juvenile court may consider the seriousness of the offense and whether the juvenile justice system can adequately protect the public and rehabilitate the defendant. *State v. Holland,* 98 Wash.2d 507, 656 P.2d 1056 (1983). However, it does not necessarily follow from R.C.W. 13.40.110 that the Washington legislature deliberately concluded that it would be appropriate to impose the penalty of life imprisonment without the possibility of parole on juvenile offenders under the age of 16. *Thompson,* 487 U.S. at 850, 108 S.Ct. at 2707. Indeed, in the State of Washington, Harris and his codefendant, Massey, are the only juveniles under the age of 16 who are presently serving a mandatory sentence of life imprisonment without the possibility of parole.

Few, if any, state legislatures have imposed a mandatory life sentence without the possibility of parole on juvenile offenders under the age of 16. In the absence of the Washington legislature's explicit intent to do so, I do not believe that we should sanction imposing such an extreme penalty on Harris. *See Thompson,* 487 U.S. at 849, 108 S.Ct. at 2706–07. I would grant habeas relief.