**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 29 1999**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**
**TENTH CIRCUIT**

---

TRENTON LYNN HAWKINS,

      Petitioner-Appellant,

v.

STEVE HARGETT, Warden;
ATTORNEY GENERAL OF THE
STATE OF OKLAHOMA,

      Respondents-Appellees,

No. 98-5162

---

Appeal from the United States District Court
for the Northern District of Oklahoma
(D.C. No. 95-CV-413-BU(J))

---

Stephen J. Greubel of Law Offices of Maynard I. Ungerman, Tulsa, Oklahoma,
for Petitioner-Appellant.

Steven E. Lohr, Assistant Attorney General of the State of Oklahoma (W.A. Drew
Edmondson, Attorney General of the State of Oklahoma, with him on the brief),
Oklahoma City, Oklahoma, for Defendants-Appellees.

---

Before **SEYMOUR**, Chief Judge, **LUCERO**, Circuit Judge, and **KIMBALL**,[*]
District Judge.

---

**SEYMOUR**, Chief Judge.

---

    [*]Honorable Dale A. Kimball of the United States District Court for the
District of Utah, sitting by designation.

Trenton Lynn Hawkins appeals from the federal district court's order denying his petition for a writ of habeas corpus filed pursuant to 28 U.S.C. §2254. The issue before us is whether the prison sentence imposed on Mr. Hawkins is unconstitutionally disproportionate in violation of the Eighth Amendment. For the reasons set forth below, we affirm the judgment of the district court.

**I.**

In the early morning hours of August 11, 1983, Trent Hawkins, then thirteen years and 11 months old, broke into his neighbor's home through a window. The neighbor awoke to find Mr. Hawkins in her bedroom, brandishing one of her kitchen knives. After a brief struggle, he tied her with ropes and blindfolded her, then raped and sodomized her repeatedly. Throughout the two and a half hour episode, Mr. Hawkins threatened the victim with the knife and threatened to kill her children if she told the police. After the sexual assaults, Mr. Hawkins took seven dollars out of the victim's purse and fled.

A referee certified Mr. Hawkins to stand trial as an adult, and this decision was upheld on appeal by both the Tulsa County District Court and the Oklahoma Court of Criminal Appeals. A jury found Mr. Hawkins guilty of first degree burglary, robbery with a dangerous weapon, forcible sodomy, and second degree

rape. The jury sentenced Mr. Hawkins to maximum sentences of twenty years for the burglary, twenty years for forcible sodomy, and fifteen years for rape, and to forty-five years out of a possible life sentence for robbery with a dangerous weapon. The trial judge ordered that these sentences be served consecutively, resulting in a total term of one hundred years. The Oklahoma Court of Criminal Appeals affirmed Mr. Hawkins' conviction and sentences. *See Hawkins v. State*, 742 P.2d 33 (Okla. Crim. App. 1987).

In 1991, Mr. Hawkins filed a federal habeas action pursuant to 28 U.S.C. § 2254 wherein the district court denied relief. On appeal, this court remanded the case and ordered the district court to dismiss the petition without prejudice because Mr. Hawkins had not exhausted all of his claims in state court. *See Hawkins v. Champion*, No. 92-5072, 1992 WL 372598, at *3-4 (10th Cir. Dec. 18, 1992). Significantly for our purposes here, we also noted "[t]he district court did not undertake a full Eighth Amendment proportionality review of Mr. Hawkins' sentence." *Id.* at *4 (citing *Harmelin v. Michigan*, 501 U.S. 957 (1991)).

Mr. Hawkins filed an application for post-conviction relief in state court challenging his sentence as disproportionate in violation of the Eighth Amendment. The court denied relief, and the state court of criminal appeals affirmed. Mr. Hawkins then filed this petition in federal district court, which was referred to a magistrate judge for an evidentiary hearing and proportionality

review. The Magistrate's Report and Recommendation included a detailed proportionality review and recommended denying the petition. The district court affirmed over Mr. Hawkins' objection, and he now appeals to this court. We review a district court's denial of a habeas corpus petition de novo. *See Bradshaw v. Story*, 86 F.3d 164, 166 (10th Cir. 1996).

## II.

At the outset, it is important to make clear what Mr. Hawkins does not argue. He is not disputing the state's initial decision to certify him to stand trial as an adult. Nor does he contend that the one hundred-year sentence he received would be disproportionate had it been imposed on an adult. Instead, Mr. Hawkins urges us to examine whether the consecutive sentences were constitutionally disproportionate in light of the fact that at the time he committed the crimes he was only thirteen years old.

### A. The Eighth Amendment Proportionality Test

In order to decide this issue, we must first determine the correct analytic framework to apply to questions of proportionality. The Eighth Amendment's guarantee against "cruel and unusual" punishments has been most commonly read

to bar unnecessarily painful or barbarous methods of punishment. *See O'Neil v. Vermont*, 144 U.S. 323, 339 (1892) (Field, J., dissenting). At the beginning of this century, the Supreme Court interpreted the Eighth Amendment to prohibit a sentence that was disproportionate to the offense. *See Weems v. United States*, 217 U.S. 349, 367 (1910) (invalidating a sentence of fifteen years in chains and at hard labor, plus permanent surveillance and civil disabilities, for the crime of falsifying a public document). The Court has continued to recognize the existence of a proportionality rule in noncapital cases, although it has made clear that "successful challenges to the proportionality of particular sentences should be exceedingly rare." *Rummel v. Estelle*, 445 U.S. 263, 272 (1980). *See also Hutto v. Davis*, 454 U.S. 370, 374 & n.3 (1982).

In *Solem v. Helm*, 463 U.S. 277 (1983), the Supreme Court articulated a three-part test for analyzing proportionality claims under the Eighth Amendment. It instructed courts to use "objective criteria" to evaluate: "(i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions." *Id.* at 292. Applying this analysis, the Court overturned a sentence of life in prison without possibility of parole for a nonviolent recidivist. This decision was the Court's sole instance of such a holding through the end of the decade, and it failed to precipitate a sweeping

trend toward sentence reversals based on the Eighth Amendment. *See* Arthur W. Campbell, *Law of Sentencing* § 8:20, at 217 & n.83 (2d ed., 1991).

The Court revisited the proportionality issue in *Harmelin v. Michigan*, 501 U.S. 957 (1991). The opinion was a fractured one, and it left the meaning of *Solem* less than clear. Justice Scalia, joined by the Chief Justice, argued that cruelty and unusualness are to be determined solely by reference to the punishment at issue, and without reference to the crime for which it was imposed. *See id.* at 976. Undertaking an extensive historical analysis of the Eighth Amendment, Justice Scalia concluded that "*Solem* was simply wrong; the Eighth Amendment contains no proportionality guarantee." *Id.* at 965.

Justice Kennedy, joined by Justices O'Connor and Souter, wrote separately to argue for the existence of a narrow proportionality guarantee. *See id.* at 996. His partial concurrence focused on the discretionary language in *Solem*, pointing out that *Solem* had merely said, "'it *may* be helpful to compare sentences imposed on other criminals in the same jurisdiction,' and that 'courts *may* find it useful to compare the sentences imposed for commission of the same crime in other jurisdictions.'" *Id.* at 1005 (Kennedy, J., concurring) (emphasis in original) (quoting *Solem*, 463 U.S. at 291-92). Justice Kennedy interpreted this to mean that "comparative analysis within and between jurisdictions is not always relevant to proportionality review," and concluded that "intrajurisdictional and

interjurisdictional analyses are appropriate only in the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." *Id.* He did not outline specific criteria for courts to consider in making this threshold determination of gross disproportionality. The four dissenters in *Harmelin* argued for the continued application of all three prongs of the *Solem* test. *See id.* at 1018-22 (White, Blackmun, Stevens, JJ., dissenting); *id.* at 1027-28 (Marshall, J., dissenting).

Until now we have found it unnecessary to decide whether *Harmelin* in fact overruled or otherwise altered *Solem*, and what the correct proportionality analysis should be. *See, e.g., United States v. Robertson*, 45 F.3d 1423, 1447 (10th Cir. 1995); *United States v. Angulo-Lopez*, 7 F.3d 1506, 1510 (10th Cir. 1993). Other circuits have employed the following "head count" analysis to determine that Justice Kennedy's opinion is controlling. Seven members of the *Harmelin* Court (Kennedy, O'Connor, and Souter, JJ., concurring, and White, Blackmun, Stevens, and Marshall, JJ., dissenting) supported some Eighth Amendment guarantee against disproportionate sentences. However, five Justices (Scalia, J., and Rehnquist, C.J., writing the opinion of the Court, and Kennedy, O'Connor, and Souter, JJ., concurring) rejected the continued application of all three factors in *Solem*. The controlling position is the one "taken by those Members who concurred in the judgments on the narrowest grounds." *Marks v.*

*United States*, 430 U.S. 188, 193 (1977). Thus, Justice Kennedy's opinion controls because it both retains proportionality and narrows *Solem*. *See McCullough v. Singletary*, 967 F.2d 530, 535 (11th Cir. 1992); *United States v. Bland*, 961 F.2d 123, 129 (9th Cir. 1992); *McGruder v. Puckett*, 954 F.2d 313, 316 (5th Cir. 1992).[1]

We find this reasoning persuasive and hold that Justice Kennedy's opinion in *Harmelin* narrows *Solem* and sets forth the applicable Eighth Amendment proportionality test. Accordingly, we examine Mr. Hawkins' sentence in relation to his crimes for "gross disproportionality." If we do not find it, there is no need to proceed to the comparative analyses.

## B. Application of the Test to Mr. Hawkins

Mr. Hawkins urges us, in conducting our proportionality review, to consider his youth at the time of the crimes as a mitigating factor. The chronological age of a defendant is a factor that can be considered in determining whether a punishment is grossly disproportionate to the crime inasmuch as it

---

[1]The Fourth Circuit continues to apply the full *Solem* test on the theory that "a majority of the *Harmelin* Court either declined expressly to overrule *Solem* or explicitly approved of *Solem*." *United States v. Kratsas*, 45 F.3d 63, 67 (4th Cir. 1995). We are not convinced by this reasoning. The Kennedy concurrence is quite explicit in its narrowing construction of *Solem*. "*Solem* . . . did not announce a rigid three-part test." *Harmelin*, 501 U.S. at 1004.

relates to his culpability. *Solem* instructed courts to compare the gravity of an offense with the severity of the sentence by looking at "the harm caused or threatened to the victim or society, and the culpability of the offender." 463 U.S. at 292.[2] Culpability can be weighed by examining factors such as the defendant's motive and level of scienter, among other things. *Id.* at 293-94.

In the context of capital cases, the Supreme Court has indicated that the age of a young defendant is relevant, in the Eighth Amendment sense, to his culpability. The plurality in *Thompson v. Oklahoma*, 487 U.S. 815, 835 (1987), concluded that "less culpability should attach to a crime committed by a juvenile than to a comparable crime committed by an adult." Justice O'Connor's controlling opinion in *Thompson* recognized that "[t]he special qualitative characteristics of juveniles that justify legislatures in treating them differently from adults . . . are also relevant to Eighth Amendment proportionality analysis." *Id.* at 854 (O'Connor, J.).[3] In *Eddings v. Oklahoma*, 455 U.S. 104, 116 (1982), moreover, the Supreme Court noted that the chronological age of a minor is a

---

[2]Justice Kennedy's opinion in *Harmelin* does not overrule, or even address, the holding in *Solem* that identifies culpability as relevant when determining the gravity of the offense. Because this is the very element of *Solem's* proportionality review that Justice Kennedy's concurrence adopts as preeminent, it follows that *Solem's* elaboration of that element remains applicable following *Harmelin*.

[3]Justice O'Connor qualified this statement by adding that it is the legislature, not the courts, that should decide the appropriate age cut-off for the death penalty. 487 U.S. at 854.

"relevant mitigating factor of great weight," in a death penalty case.

Other cases have dealt with the proportionality issue in the context of youthful defendants given statutorily mandated sentences. In *Harris v. Wright*, 93 F.3d 581 (9th Cir. 1996), the defendant was fifteen years old when he committed aggravated first-degree murder and received the state's mandatory sentence of life without parole. He argued that his sentence was grossly disproportionate to "a fifteen-year-old's limited culpability for any crime." *Id.* at 584. The Ninth Circuit disagreed, holding that it had no power to reverse the state legislature's decision on the matter. *Id.* In *Rice v. Cooper*, 148 F.3d 747 (7th Cir. 1998), the Seventh Circuit decided that life without parole was not a disproportionate punishment for a sixteen-year-old mentally retarded boy who killed four people. Although the court stated that the defendant's youth "argue[d] for a lighter sentence," it, too, found that the statutorily mandated sentence of life without parole was not disproportionate to the crime. *Id.* at 752.[4] In *State v. Green*, 502 S.E.2d 819 (N.C. 1998), the Supreme Court of North Carolina was faced with a

---

[4]The court also reasoned that the defendant was morally responsible for the crime, and therefore sufficiently culpable under the proportionality analysis, because he had "sufficient mental capacity to form the intent required to be found guilty of the crime." *Id.* at 752. If this very low culpability standard is applied in order to determine whether the sentences of youthful offenders are disproportionate, it appears that few would ever be found to have diminished culpability due to age. Indeed, if a youthful offender lacked the mental capacity to form the necessary intent, it is unlikely that he would be certified to stand trial as an adult.

fact pattern disturbingly similar to the case at bar -- a thirteen-year-old who burglarized his neighbor's house and raped her. The boy was convicted and received a mandatory sentence of life in prison. The court found that, "[w]hile the chronological age of a defendant is a factor that can be considered in determining whether a punishment is grossly disproportionate to the crime, the Court's review is not limited to this factor." *Id.* at 832.

Thus, we are still left with the question of whether and how a youthful defendant's age should factor in to the proportionality analysis when, as here, the punishment was not mandated by the legislature but was set by a judge within a range of sentences the legislature specified. We agree with the North Carolina court's approach, and hold that age is a relevant factor to consider in a proportionality analysis. This is so because the first prong of the *Solem* test allows for courts to consider multiple factors relevant to culpability, an option that *Harmelin* does not foreclose.

This conclusion does not, however, lead to a finding that Mr. Hawkins' punishment is grossly disproportionate to his crimes. Mr. Hawkins' crimes were serious, involving a deadly weapon, a home invasion, threats of violence, and repeated sexual attacks. Although his culpability may be diminished somewhat due to his age at the time of the crimes, it is arguably more than counterbalanced by the harm Mr. Hawkins caused to his victim. By way of comparison, the

Supreme Court has found that a life sentence without parole is not disproportionate to the crime of possession of 672 grams of cocaine, *see Harmelin*, 501 U.S. 957, and that a life sentence with the possibility of parole is not disproportionate for a three-time non-violent recidivist, *see Rummel*, 445 U.S. 263. If these offenses warrant such severe punishments, Mr. Hawkins' crimes surely merit the punishment he received, even when we take his age at the time of the offense into account.

It is also important to the analysis that Mr. Hawkins' prison sentence, while lengthy, will be shortened considerably by the availability of parole and "good time" credits. His consolidated record card indicates he has already completed his sentences for the rape and sodomy convictions. In fact, Mr. Hawkins is slated to serve a total of thirty-five years for all four convictions combined, and will be eligible for parole in approximately fifteen years.

"[B]ecause parole is 'an established variation on imprisonment of convicted criminals,'" *Rummel*, 445 U.S. at 280-81, a proper assessment of Mr. Hawkins' punishment cannot ignore the possibility that he will actually only serve roughly one-third of his sentence. We have previously held that the availability of parole is relevant to determining whether the length of the sentence violates the Eighth Amendment. *See Gutierrez v. Moriarty*, 922 F.2d 1464, 1473 (10th Cir. 1991) (finding life sentence for recidivist drug offender not cruel and unusual

-12-

punishment where parole was available).

Several courts have determined that the availability of parole should foreclose proportionality review altogether, on the reasoning that any sentence less than life without parole can never be "grossly disproportionate." *See, e.g., United States v. Organek*, 65 F.3d 60, 63 (6th Cir. 1995); *United States v. Lockhart*, 58 F.3d 86, 89 (4th Cir. 1995); *United States v. Meirovitz*, 918 F.2d 1376, 1381 (8th Cir. 1990). We believe these cases go too far. While we recognize that the availability of parole is a relevant consideration, we are not willing to make it dispositive. The test for gross disproportionality requires us to examine the fit between punishment and crime. Allowing the analysis to turn on the single factor of parole focuses solely on the punishment side of the equation. We are not persuaded the Supreme Court intended this threshold analysis to be further abbreviated. Thus, while the availability of parole is one factor in our threshold inquiry, it does not foreclose proportionality review. *See, e.g., United States v. Lemons*, 941 F.2d 309, 320 (5th Cir. 1991).

In addition, all of Mr. Hawkins' sentences were within the permissible statutory range for the offenses he committed. We are reluctant to interfere with the legislative determination of an appropriate sentence range. *See Rummel*, 445 U.S. at 274 (concluding that length of prison sentences for serious felonies may be "purely a matter of legislative prerogative"); *United States v. Youngpeter*, 986

-13-

F.2d 349, 355 (10th Cir. 1993) ("If the imposed sentence is within the statutory limits . . . an appellate court 'generally will not regard it as cruel and unusual punishment.'") (citation omitted).[5]

In light of the nature of his crimes, the Supreme Court's benchmarks, and the legislature's proper role in setting sentencing ranges, we cannot say that Mr. Hawkins' one hundred-year sentence with the possibility of parole is grossly disproportionate to the four violent acts he committed. Having so decided, we need not address the other prongs of the *Solem* analysis.

Nor are we persuaded that the punishment here separately offends the Eighth Amendment's guarantee against cruel and unusual punishment that is informed by "'evolving standards of decency that mark the progress of a maturing society.'" *Thompson*, 487 U.S. at 822 (citing *Trop v. Dulles*, 356 U.S. 86, 101 (1958)). In *Thompson*, a plurality of the Supreme Court specifically considered

---

[5]Mr. Hawkins seems to argue that his punishment should receive a closer proportionality review because the judge imposed his four sentences consecutively. We are not convinced. The Eighth Amendment analysis focuses on the sentence imposed for each specific crime, not on the cumulative sentence for multiple crimes. *See, e.g., O'Neil v. Vermont*, 144 U.S. 323, 331 (1892) ("If [the defendant] has subjected himself to a severe penalty, it is simply because he committed a great many such offences."); *United States v. Schell*, 692 F.2d 672, 675 (10th Cir. 1982) (twenty year sentence consecutive to current ninety-five year sentence not a violation of the Eighth Amendment). Moreover, "[i]t is clear that the decision to run the sentences concurrently or consecutively is a matter within the trial court's discretion." *Money v. State*, 700 P.2d 204, 207 (Okla. Crim. App. 1985).

the defendant's age when holding that "it would offend civilized standards of decency to execute a person who was less than 16 years old at the time of his or her offense." *Id.* at 830. While the evolving standards of decency test is applicable here, *Thompson's* specific holding is of limited value to us because it dealt with the death penalty and was explicitly cabined as such. The Court has made it clear that death is qualitatively different than other punishments, warranting a more searching Eighth Amendment review. *See Harmelin*, 501 U.S. at 995.

Other reviewing courts have declined to find that a defendant's age caused a penalty to offend "evolving standards of decency" when the penalty was a statutorily mandated sentence less than death. *See, e.g., Rodriguez v. Peters*, 63 F.3d 546, 568 (7th Cir. 1995) (life in prison without parole did not violate evolving standards of decency where defendant committed crime at age fifteen); *State v. Massey*, 803 P.2d 340, 348 (Wash. Ct. App. 1990) (same regarding thirteen-year-old).

Moreover, there is apparently no societal consensus that a long sentence imposed on a defendant for serious crimes he committed at age thirteen offends evolving standards of decency. The North Carolina Supreme Court recently found that nineteen states allow adult penalties for thirteen-year-olds convicted of serious crimes. *See Green*, 502 S.E.2d 819, 831 (listing states). The court

determined that the *growing* minority of states permitting such punishment is evidence of changing public sentiment toward modern society's violent youthful offenders, and that "sentencing a thirteen-year-old defendant to mandatory life imprisonment . . . is within the bounds of society's current and evolving standards of decency." *Id.* Thus, modern society apparently condones the severe punishment of individuals who commit serious crimes at young ages. We therefore cannot say that a punishment of a term of years for a violent crime, with the possibility of parole, violates "evolving standards of decency" simply because the defendant was thirteen years old at the time of the offense.

## III.

Having carefully considered Mr. Hawkins' claims, we conclude his sentence does not violate the Eighth Amendment. We **AFFIRM** the judgment of the district court denying Mr. Hawkins' petition for a writ of habeas corpus.