IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 51822-8-II |
| Respondent, | |
| v. | |
| ARKANGEL D. HOWARD, | PARTIALLY PUBLISHED OPINION |
| Appellant. | |

GLASGOW, J.—Arkangel D. Howard shot and killed two men outside his girlfriend's apartment and drove off. There was no evidence of a motive. A jury found Howard guilty of premeditated first degree murder for both killings.[1] At sentencing, the trial court determined that one of Howard's prior out-of-state convictions was comparable to a Washington felony and included it in his offender score, but the trial court declined to include a second out-of-state conviction. Therefore, Howard did not qualify as a persistent offender.

Howard appeals his convictions for premeditated first degree murder and his sentence. He argues that the State presented insufficient evidence of premeditation to support his convictions for first degree murder. He also argues that the trial court erred by ruling that his prior conviction for attempted first degree robbery in Oregon was comparable to a Washington felony, and he asks to be resentenced. He contends that the trial court erred by imposing a criminal filing fee. In addition, Howard files a statement of additional grounds (SAG).

---

[1] Howard was also convicted of unlawful possession of a firearm, but he does not challenge that conviction or his sentence for that crime.

The State cross appeals, arguing that the trial court erred by ruling that the second of Howard's prior out-of-state convictions, for third degree robbery in Oregon, was not comparable to the Washington crime of second degree robbery.

In the published portion of this opinion, we hold that the trial court erred at sentencing. Howard's prior out-of-state attempted first degree robbery conviction was not comparable to a Washington felony and should have been excluded from the court's calculation of Howard's offender score. However, Howard's prior out-of-state third degree robbery conviction was factually comparable to second degree robbery under Washington law and should have been included in the offender score calculation. Howard still does not qualify as a persistent offender.

In the unpublished portion of this opinion, we hold that there was sufficient evidence of premeditation to support Howard's convictions for premeditated first degree murder, that the criminal filing fee was improperly imposed, and that nothing in Howard's SAG requires reversal.

We affirm Howard's convictions, reverse his sentence, and remand for resentencing consistent with this opinion. The trial court must not impose the criminal filing fee upon resentencing.

FACTS

Howard shot and killed Allen Collins Jr. and Jason Benton. A jury found Howard guilty of two counts of premeditated first degree murder.

In calculating Howard's offender score and determining whether he was a persistent offender, the trial court considered whether two of Howard's prior convictions in Oregon were comparable to Washington felonies. The trial court determined that Howard's prior conviction for attempted first degree robbery, although not legally comparable, was factually comparable to the

Washington crime of attempted first degree robbery. The trial court included this conviction in calculating Howard's offender score. The trial court determined that Howard's prior conviction for third degree robbery was neither legally nor factually comparable to a Washington felony, and the court did not include this conviction in calculating the offender score. Because Howard did not have three strikes, the trial court did not sentence him as a persistent offender. The trial court sentenced Howard to 760 months in prison.

Howard appeals his convictions and sentence. With regard to his sentence, he argues that the trial court improperly included his Oregon attempted first degree robbery conviction in the offender score. The State cross appeals the exclusion of Howard's Oregon third degree robbery conviction from the offender score and, ultimately, the trial court's decision not to sentence Howard as a persistent offender.

ANALYSIS

HOWARD'S OUT-OF-STATE CONVICTIONS

Both Howard and the State challenge the trial court's decisions regarding whether Howard's prior Oregon convictions should be included in his offender score and considered in the trial court's persistent offender analysis. We conclude that the trial court should not have included in Howard's offender score his prior Oregon conviction for attempted first degree robbery, but the trial court should have included his prior Oregon conviction for third degree robbery. The trial court correctly concluded that Howard was not a persistent offender.

A.      Comparability of Out-of-State Convictions and Standard of Review

Under the Sentencing Reform Act of 1981, chapter 9.94A RCW, the trial court uses the defendant's prior convictions to determine an offender score which, along with the seriousness

3

level of the current offense, establishes a presumptive standard sentencing range. *State v. Olsen*, 180 Wn.2d 468, 472, 325 P.3d 187 (2014). A defendant's sentence is determined based on the law in effect when the defendant committed the offense. RCW 9.94A.345.

We review a sentencing court's calculation of an offender score de novo. *Olsen*, 180 Wn.2d at 472. We review underlying factual determinations for abuse of discretion. *In re Pers. Restraint of Toledo-Sotelo*, 176 Wn.2d 759, 764, 297 P.3d 51 (2013).

The State must prove the existence of prior felony convictions by a preponderance of the evidence. RCW 9.94A.500(1). If the convictions are from another jurisdiction, the State must also prove that they are comparable to a Washington felony. RCW 9.94A.525(3); *Olsen*, 180 Wn.2d at 472. "Comparability is both a legal and a factual question." *State v. Collins*, 144 Wn. App. 547, 553, 182 P.3d 1016 (2008).

As to the legal prong, "If the Washington statute defines the offense with elements that are identical to, or broader than, the foreign statute, then the conviction under the foreign statute is necessarily comparable to a Washington offense." *Id.* "If, however, the foreign statute is broader than the Washington statute, the court moves on to the factual prong—determining whether the defendant's conduct would have violated the comparable Washington statute." *Olsen*, 180 Wn.2d at 473. In this factual analysis, courts "consider only facts that were admitted, stipulated to, or proved beyond a reasonable doubt." *Id.* at 473-74.

If an out-of-state conviction involves an offense that is neither legally nor factually comparable to a Washington offense, the sentencing court may not include that conviction in the defendant's offender score. *State v. Thiefault*, 160 Wn.2d 409, 415, 158 P.3d 580 (2007) (citing *In re Pers. Restraint of Lavery*, 154 Wn.2d 249, 258, 111 P.3d 837 (2005)). If a defendant has been

erroneously sentenced, we will remand for resentencing. *State v. Wilson*, 170 Wn.2d 682, 690, 244 P.3d 950 (2010).

B.        Howard's Appeal—Attempted First Degree Robbery

Howard argues the trial court erred in determining that his 2005 Oregon conviction for attempted first degree robbery was comparable to the Washington crime of attempted first degree robbery. We agree.

1.        Legal comparability

At the time Howard committed the offense of attempted first degree robbery in 2005, Oregon's attempt statute provided that "[a] person is guilty of an attempt to commit a crime when the person intentionally engages in conduct which constitutes a substantial step toward commission of the crime." Former OR. REV. STAT. § 161.405(1) (1971). In 2005, Oregon's robbery statute provided that a person commits first degree robbery if they commit a robbery and they are armed with a deadly weapon, use or attempt to use a dangerous weapon, or cause or attempt to cause serious physical injury. Former OR. REV. STAT. § 164.415(1) (1971).

Washington's attempt statute provides that "[a] person is guilty of an attempt to commit a crime if, *with intent to commit a specific crime*, he or she does any act which is a substantial step toward the commission of that crime." RCW 9A.28.020(1) (emphasis added).[2] Washington's first degree robbery statute provides in relevant part that a person commits first degree robbery if "[i]n the commission of a robbery or of immediate flight therefrom, [they are] . . . armed with a deadly

---

[2] RCW 9A.28.020 was last amended in 2001, so the current version of the statute was the version in effect when Howard committed attempted first degree robbery in 2005.

weapon; or . . . [d]isplay[] what appears to be a firearm or other deadly weapon; or . . . [i]nflict[] bodily injury." RCW 9A.56.200(1)(a).[3]

The elements of a conviction for attempted first degree robbery were broader in Oregon than in Washington at the time Howard's offense was committed. First, Washington required an intent *to commit robbery* in addition to taking a substantial step toward its commission, whereas Oregon required the intentional taking of a substantial step, but with no specific intent requirement. Second, in Washington the crime of first degree robbery included a means that required the defendant to inflict bodily injury, whereas in Oregon a defendant could be convicted if they only *attempted* to cause injury. Thus, Howard's prior Oregon conviction for attempted first degree robbery is not legally comparable to the equivalent Washington felony.

### 2.    Factual comparability

Next, we determine whether the facts underlying Howard's conviction for attempted first degree robbery in Oregon would have constituted attempted first degree robbery in Washington. *See Olsen*, 180 Wn.2d at 473. Citing *Lavery*, Howard argues this inquiry is unnecessary and improper where the foreign statute has been determined to be broader. In *Lavery*, our Supreme Court stated: "Where the foreign statute is broader than Washington's, [the factual comparability] examination *may* not be possible because there *may have been* no incentive for the accused to have attempted to prove that he did not commit the narrower offense." 154 Wn.2d at 257 (emphasis added). But the court reached this conclusion in *Lavery* because the underlying facts had not been admitted, stipulated to, or proved beyond a reasonable doubt. *Id.* at 258. *Olsen* reaffirmed that the

---

[3] RCW 9A.56.200 was last amended in 2002, so the current version of the statute was the version in effect when Howard committed attempted first degree robbery in 2005.

factual comparability analysis is appropriate where it is limited to the consideration of "only those facts that were clearly charged and then clearly proved beyond a reasonable doubt to a jury or admitted by the defendant." 180 Wn.2d at 476.

Howard also relies on Division One's decision in *State v. Davis*, 3 Wn. App. 2d 763, 418 P.3d 199 (2018). There, Division One considered whether five prior California burglary convictions were factually comparable to the Washington crime of burglary. *Id.* at 777. The State alleged that the defendant unlawfully entered a building in each of those prior incidents, and the defendant pleaded guilty to each charge. *Id.* at 779-80. However, the *Davis* court focused only on the language in the charging document, not a plea statement where the defendant admitted to underlying facts. *Id.* The *Davis* court explained that based on *Lavery*, the factual comparability inquiry had to focus on facts that were central to proving the elements of the foreign crime. *Id.* at 782. Because the relevant California statute, unlike the Washington statute, did not include "unlawful entry" as an element of burglary, the defendant had no incentive to dispute that element. *Id.*

Although both *Lavery* and *Davis* require appellate courts to consider only facts that were admitted or proved at trial, and those facts must have been tethered to the elements of the foreign crime, neither case prevents us from considering factual comparability in this case, as Howard seems to suggest. Unlike in *Davis*, here we have a specific plea statement where Howard admitted to the underlying facts proving the elements of the foreign crime. Thus, as in *Olsen*, we must determine whether the facts admitted in Howard's plea statement were factually comparable to attempted first degree robbery in Washington.

Howard pleaded guilty to attempted first degree robbery, admitting in his plea statement that he "helped another person take a substantial step towards using a firearm to steal money." Clerk's Papers (CP) at 121. In Oregon, "[a] guilty plea implicitly admits all facts necessary to support the material elements of a charge," but it does not constitute an admission of any facts that go beyond those essential elements. *State v. Kappelman*, 162 Or. App. 170, 175, 986 P.2d 603 (1999).

The State argues Howard's admission would have constituted attempted first degree robbery in Washington because he admitted to taking a substantial step toward committing robbery and to being armed with a firearm. But as noted above, Washington also requires that the defendant intend to commit the specific crime of robbery when taking a substantial step. *See* RCW 9A.28.020(1). There is no admission anywhere in Howard's plea statement indicating his specific intent during the commission of the crime. Because Howard did not admit to intending to commit robbery when he helped someone take a substantial step toward stealing money using a firearm, his guilty plea does not establish all of the essential elements of the Washington crime of attempted first degree robbery.

Therefore, the State has not met its burden to show that Howard's Oregon conviction for attempted first degree robbery is factually comparable to a Washington felony, and the trial court erred in so ruling. Howard's prior Oregon conviction for attempted first degree robbery should not have been included in his offender score, nor should it be considered in a persistent offender analysis.

C.      The State's Cross Appeal—Third Degree Robbery

In its cross appeal, the State argues the trial court erred in determining that Howard's 2004 Oregon conviction for third degree robbery was not legally or factually comparable to the Washington crime of second degree robbery. Howard argues the trial court correctly concluded these two crimes were not comparable. We conclude that the crimes were not legally comparable but, contrary to the trial court's ruling, they were factually comparable.

1.      Legal comparability

Oregon law provides that a person commits third degree robbery if, in the course of committing or attempting to commit theft, they use or threaten the "immediate use of physical force upon another person with the intent of: (a) [p]reventing or overcoming resistance to the taking of the property . . . or (b) [c]ompelling the owner . . . or another person to deliver the property or engage in other conduct which might aid in the commission of the theft." OR. REV. STAT. § 164.395(1).[4]

In 2004, Washington law provided that a person commits robbery when they unlawfully take personal property against another person's will

> by the use or threatened use of immediate force, violence, or fear of injury to that person or his property or the person or property of anyone. Such force or fear must be used to obtain or retain possession of the property, or to prevent or overcome resistance to the taking; in either of which cases the degree of force is immaterial.

---

[4] Or. Rev. Stat. § 164.395 was last amended in 2003, so the current version of the statute was the version in effect when Howard committed third degree robbery in 2004.

Former RCW 9A.56.190 (1975); *see also* former RCW 9A.56.210(1) (1975) ("A person is guilty of robbery in the second degree if he commits robbery."). In 2004, any person who aided and abetted in the commission of any crime was guilty of that crime. RCW 46.64.048.[5]

The State argues that these two crimes are legally comparable, citing *State v. McIntyre*, 112 Wn. App. 478, 49 P.3d 151 (2002). There, Division One held that the Oregon crime of third degree robbery is legally comparable to the Washington crime of second degree robbery. *Id.* at 483. The court noted that "[b]oth statutes require (a) a theft; (b) the use or threatened use of immediate force or fear of injury; and ([c]) the force or fear be used to obtain or retain the property." *Id.* at 481. The court rejected the defendant's argument that the Washington statute included an additional requirement that the property be taken either from the victim's person or in their presence and against their will, and it held that the elements of the two crimes were the same. *Id.* at 481-83.

However, as Howard points out, no party in *McIntyre* presented the issue raised in this case—that the Washington second degree robbery statute required an actual taking of property, whereas the Oregon statute provides that third degree robbery encompasses both actual theft and *attempted* theft of property. The *McIntyre* court did not have an opportunity to address this specific issue. Addressing it now, we conclude that the Oregon statute prohibits a broader array of conduct than the Washington statute. In Oregon, someone could be convicted of third degree robbery for using force when merely attempting to commit theft, while in Washington in 2004, second degree robbery was committed only when someone used force in successfully committing theft.

---

[5] RCW 46.64.048 was last amended in 1990, so the current version of the statute was the version in force in 2004.

We hold that Howard's 2004 Oregon conviction for third degree robbery was not legally comparable to the Washington crime of second degree robbery as it was defined at that time. The Oregon robbery statute was broader than its 2004 Washington equivalent because it encompassed attempted thefts as well as committed thefts, whereas the Washington statute applied only when theft had been committed.

 2. <u>Factual comparability</u>

The State argues that these two crimes are factually comparable. The State points to Howard's admission when pleading guilty to third degree burglary that he "'aided and abetted Latisha M. Storey in taking property from Marshalls by assaulting Richard Wyche who [was] chasing [Howard's] sister and attempting to take her in custody for shoplifting.'" CP at 91 (first alteration in original). Howard again contends that it is improper to reach the factual comparability prong, but as discussed above, it is appropriate to consider Howard's admission made in his plea statement to determine factual comparability with Washington's crime of second degree robbery.

In his plea statement, Howard admitted to using physical force (assault) with the intent of overcoming Wyche's resistance to the taking of property by his sister and to aid his sister in retaining the property. Howard's admission therefore establishes each of the elements of Washington's second degree robbery statute as it existed in 2004. *See* former RCW 9A.56.190; *see also* RCW 46.64.048 (establishing that any person who aids and abets in the commission of any crime is guilty of that crime). The factual comparability prong is met. Thus, the trial court erred when it concluded that Howard's admission was insufficient to meet the State's burden to show factual comparability. This conviction should have been included in Howard's offender score.

11

Because Howard's prior Oregon conviction for attempted first degree robbery should not be included in his offender score, Howard does not have three strikes and should not be sentenced as a persistent offender on remand. *See* 13 Verbatim Report of Proceedings (VRP) at 1395 (trial court finding no other qualifying prior crimes and concluding that, with only one prior qualifying conviction, Howard was not subject to a persistent offender sentence).

CONCLUSION

We affirm Howard's convictions, reverse his sentence, and remand for resentencing consistent with this opinion. The trial court must not impose the criminal filing fee upon resentencing.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Howard appeals his convictions for premeditated first degree murder, arguing that the State presented insufficient evidence of premeditation to support the convictions. He also contends that the trial court erred by imposing a criminal filing fee. In addition, Howard filed a SAG. We hold that there was sufficient evidence of premeditation to support Howard's convictions for premeditated first degree murder. The criminal filing fee, however, was improperly imposed. Nothing in Howard's SAG requires reversal.

ADDITIONAL FACTS

Howard agreed to help his girlfriend, Valerie Sizemore, move out of her apartment in Vancouver, Washington. Howard drove Sizemore's car to Portland, Oregon to obtain a truck, and he enlisted two of his acquaintances, Collins and Benton, to drive back to Vancouver with him to

help with the move. Sizemore had heard Collins and Benton were Howard's friends, "but it didn't really seem like they were friends when they were around." 6 VRP at 593. She did not understand why Collins and Benton accompanied Howard to Vancouver.

Howard had started consistently carrying a gun about two weeks beforehand and had carried it every day for the week prior to the shooting. Howard was carrying a gun the morning of the shooting before he drove down to Portland to get the truck.

Howard, Collins, and Benton arrived at Sizemore's apartment building in the afternoon in different cars. Sizemore came out to greet them. Shortly thereafter, Howard shot and killed Collins and Benton and then quickly got in Sizemore's car and drove off. Collins was shot once in the left side of his head. Benton was shot in the back, the armpit area, and the back of his head.

The police arrived and interviewed Sizemore and her neighbors, many of whom had heard gunfire or saw Howard arrive and then leave quickly. Sizemore initially told police that she did not know who shot Collins and Benton. But she later contacted police and told them that Howard was the shooter.

The police later discovered the gun under a shed at Howard's mother's home. The police found and arrested Howard, and the State charged him with two counts of premeditated first degree murder and one count of unlawful possession of a firearm.

At trial, Sizemore and many of her neighbors testified to what they heard and saw. Sizemore testified that she heard gunfire and saw a gun in Howard's hand immediately after the shooting. She testified that she believed Howard shot Collins and Benton. Sizemore said she "had no clue" that Howard was going to shoot them, and she was not aware of any disputes between them. 6 VRP at 596.

13

Sizemore thought she heard about four to six shots and that they were "[q]uick. Like, not even seconds." 6 VRP at 595. One neighbor testified that she heard one gunshot, a brief pause, and then four more shots in quick succession. A second neighbor testified that she heard one gunshot, a pause of no more than a couple seconds, and then four more gunshots. A third neighbor testified that he heard two shots, a half-second or one second pause, and then two more shots.

The third neighbor also testified that Howard, Collins, and Benton were just talking, and he did not notice any arguing or agitation before the shooting. A fourth neighbor said that the two victims did not seem angry or animated when he saw them just before the shooting.

There was also testimony that Collins was found with his pants down, and the autopsy showed that his bladder was half empty, suggesting he was urinating when he was killed. And each bullet striking Benton entered on the left side of his body, angling roughly back to front, showing he had turned away from the shooter.

In closing argument, the State argued that various facts showed Howard acted with premeditation. Howard shot Collins while Collins was urinating and therefore vulnerable. In other words, the State argued that Howard deliberately chose that moment to shoot Collins and, therefore, the shooting was premeditated. The State also argued that the locations and angles of Benton's gunshot wounds suggested he was bent over, running away from Howard when he was shot. The State inferred that Howard had premeditated intent to kill Benton because Howard had time to reflect between each shot as Benton tried to run away. The State did not offer a potential motive for the murders and instead argued that it was not required to prove why Howard killed Collins and Benton.

Howard argued in closing that he had no motive to kill his acquaintances and suggested that Sizemore was the one who shot Collins and Benton.

The jury found Howard guilty of two counts of premeditated first degree murder and one count of first degree unlawful possession of a firearm. Howard appeals his convictions for premeditated first degree murder.

## ANALYSIS

### I. SUFFICIENCY OF THE EVIDENCE

Howard argues that the State presented insufficient evidence of premeditation to sustain his convictions for premeditated first degree murder. We disagree and hold there was sufficient evidence of premeditation to sustain Howard's convictions.

"The State bears the burden of proving all the elements of an offense beyond a reasonable doubt." *State v. Rich*, 184 Wn.2d 897, 903, 365 P.3d 746 (2016). "To determine whether there is sufficient evidence to sustain a conviction, we review the evidence in the light most favorable to the State and ask whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Song Wang*, 5 Wn. App. 2d 12, 18, 424 P.3d 1251 (2018), *review denied*, 192 Wn.2d 1012 (2019). "'A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom.'" *Id.* (internal quotation marks omitted) (quoting *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992)). "Circumstantial evidence provides as reliable a basis for findings as direct evidence." *State v. DeJesus*, 7 Wn. App. 2d 849, 883, 436 P.3d 834, *review denied*, 193 Wn.2d 1024 (2019). "However, inferences based on circumstantial evidence must be reasonable and cannot be based on speculation." *State v. Vasquez*, 178 Wn.2d 1, 16, 309 P.3d 318 (2013).

A.      Premeditation

To convict Howard of premeditated first degree murder, the State had to prove beyond a reasonable doubt that Howard acted with premeditation to cause the deaths of Collins and Benton. RCW 9A.32.030(1)(a); *State v. Hummel*, 196 Wn. App. 329, 354, 383 P.3d 592 (2016). Premeditation must "involve more than a moment in point of time." RCW 9A.32.020(1). "The 'mere opportunity to deliberate is not sufficient to support a finding of premeditation.'" *Hummel*, 196 Wn. App. at 354 (quoting *State v. Pirtle*, 127 Wn.2d 628, 644, 904 P.2d 245 (1995)).

Premeditation requires "'the deliberate formation of and reflection upon the intent to take a human life and involves the mental process of thinking beforehand, deliberation, reflection, weighing or reasoning for a period of time, however short.'" *Id.* (quoting *State v. Hoffman*, 116 Wn.2d 51, 82-83, 804 P.2d 577 (1991)). "There are four characteristics or factors that are particularly relevant to establish premeditation: motive, procurement of a weapon, stealth, and the method of killing." *DeJesus*, 7 Wn. App. 2d at 883 (citing *Hummel*, 196 Wn. App. at 355). However, a "wide range" of other factors can also be relevant and can "support an inference of premeditation." *State v. Aguilar*, 176 Wn. App. 264, 273, 308 P.3d 778 (2013) (citing *State v. Finch*, 137 Wn.2d 792, 831, 975 P.2d 967 (1999)). Thus, we consider the totality of the circumstances. *See State v. Ollens*, 107 Wn.2d 848, 855, 733 P.2d 984 (1987) (Callow, J., concurring in result) (describing the jury's evaluation of whether a killing was premeditated as "the evaluation of the totality of the evidence in the light of all of the surrounding circumstances").[6]

---

[6] *See also State v. Hurd*, 819 N.W.2d 591, 599 (Minn. 2012) ("'Premeditation is a state of mind generally proved circumstantially by drawing inferences from a defendant's words and actions in light of the totality of the circumstances.'" (quoting *State v. Brocks*, 587 N.W.2d 37, 42 (Minn. 1998))); *People v. Avila*, 46 Cal.4th 680, 714, 208 P.3d 634, 94 Cal. Rptr. 3d 699 (2009)

Howard argues the State presented insufficient evidence of premeditation because the murders took only a couple of seconds and there was no evidence of deliberation, planning, motive, or threats. The State argues the fact that Howard brought a gun with him to Sizemore's house was sufficient to sustain the convictions for first degree murder.

In *Pirtle*, the defendant killed two former coworkers at a fast food restaurant. 127 Wn.2d at 638-39. The Washington Supreme Court determined there was sufficient evidence of premeditation where there was evidence of planning, the defendant had multiple possible motives, he brought a weapon to the scene, and he inflicted multiple, gruesome wounds. *Id.* at 644-45. The defendant hid in the parking lot of a nearby church, waiting until he believed his coworkers were alone. *Id.* at 644. He knocked both victims unconscious before cutting their throats. *Id*. at 645.

The *Pirtle* court relied in part on *Ollens*, 107 Wn.2d 848. There, the Supreme Court found sufficient evidence of premeditation where there was evidence of a motive, the defendant used a weapon, he inflicted multiple wounds and then cut the victim's throat, and he struck the victim from behind. *Ollens*, 107 Wn.2d at 853.

In *DeJesus*, Division One concluded there was sufficient evidence of premeditation because the State presented evidence of motive and planning. 7 Wn. App. 2d at 885. There, the defendant went to a home to kill one victim, shot her on the porch, and then entered the home and killed multiple others. *Id.* The court reasoned, "After shooting Kelso, DeJesus entered the home with a loaded gun, shot Kelso again, and pursued and shot Dean as he ran through the home." *Id.* This showed "a premeditated intent to kill not only Kelso, but the other occupants of the home, as

(permitting the State to argue "the jury could find defendant premeditated and deliberated based on the totality of the circumstances").

17

well. DeJesus then deliberately shot at Lum while she was holding Kaden on the ground." *Id.* at 885-86.

In *State v. Ra*, 144 Wn. App. 688, 704, 175 P.3d 609 (2008), we determined there was sufficient evidence to support a finding of premeditation in part because the defendant paused between shots and continued firing after missing twice. Witness testimony describing a pause between shots "support[ed] an inference that Ra had time to deliberate on and weigh his decision to kill." *Id.*

In contrast, in *Hummel* there was insufficient evidence of premeditation. The defendant was accused of killing his wife, who had disappeared. 196 Wn. App. at 332, 337. Hummel continued to collect his wife's retirement benefits, but later claimed she had committed suicide. *Id.* at 335-36. The court concluded that the State presented no evidence of planning or method of killing or any concrete evidence to support its theory for a possible motive. *Id.* at 355-56. The court also reasoned that there was no evidence of deliberation or reflection before the murder occurred, and the fact that the defendant took steps afterward to conceal his crime proved only his guilt, not premeditation. *Id.* at 356-57.

The parties discuss three additional cases. In *State v. Bingham*, 105 Wn.2d 820, 828, 719 P.2d 109 (1986), the Supreme Court held that manual strangulation of the victim alone, without further evidence of premeditation, was insufficient. But the court noted, in contrast, that the planned presence of a weapon had been held to show premeditation sufficiently to present the issue of premeditation to a jury. *Id.* at 827. In *State v. Massey*, 60 Wn. App. 131, 145, 803 P.2d 340 (1990), *abrogated on other grounds by State v. Houston-Sconiers*, 191 Wn. App. 436, 365 P.3d 177 (2015), there was evidence that the defendant had a gun prior to entering a marina where he

18

shot and killed someone. This court held that this fact alone was sufficient to show premeditation. *Id.* And in *State v. Rehak*, 67 Wn. App. 157, 159, 834 P.2d 651 (1992), the defendant shot her husband three times in the head while he was sitting in their home. This court held there was sufficient evidence of premeditation because the defendant prepared a gun, the victim was apparently seated and in a nonconfrontational stance, and the defendant shot him multiple times, twice after he had already fallen to the floor. *Id.* at 164.

Thus, Washington courts have considered a wide variety of facts when evaluating sufficiency of the evidence to show premeditation. The fact-specific inquiry requires us to consider the totality of the circumstances in a particular case. *See Ollens*, 107 Wn.2d at 855 (Callow, J., concurring in result).

B.      Sufficiency of the Evidence to Support Premeditation

Here, some facts weigh against premeditation. The murders of Collins and Benton took only seconds, there was no direct evidence of any motive or planning, and the shootings occurred in broad daylight in public view, so there was no complex plan to conceal the crime. Further, Howard carried a gun every day for the couple of weeks prior to the shooting, so the fact that he carried a gun the day of the murders does not, by itself, establish premeditation in this case.

But several other facts support the jury's finding of premeditation. The fact that Howard brought a gun is one factor that supports the finding of premeditation, although not a particularly strong one since he regularly carried a gun in the days before the shooting. *Pirtle*, 127 Wn.2d at 644-45; *Bingham*, 105 Wn.2d at 827; *DeJesus*, 7 Wn. App. 2d at 885; *Massey*, 60 Wn. App. at 145. Multiple witnesses testified that there was a pause between the first gunshot and the rest, which suggests Howard had a moment, however brief, to deliberate and reflect between the

killings. This evidence is similar to the evidence in *Ra*, where the defendant paused before firing additional shots, 144 Wn. App. at 704, and in *DeJesus*, where the defendant first shot the person he initially intended to kill, and then proceeded to shoot other occupants of the house, 7 Wn. App. 2d at 885-86.

Although the State did not present direct evidence of motive or planning, a reasonable jury could have inferred that Howard planned the murders from the fact that he asked both Collins and Benton to accompany him to Sizemore's home. Further, multiple witnesses testified that there were no sounds or signs of an intense argument, which supports an inference that the shooting did not occur in the heat of an altercation. These facts support the jury's finding of premeditation because they suggest that the shooting was not a spontaneous act of self-defense or anger, but instead was planned.

Moreover, Collins was shot in the side of the head, and Benton was shot multiple times in the back, torso, and head from behind or above. The State drew the inference in closing argument that the fact that Collins was found with his pants down and with a half-empty bladder suggested he had been urinating and therefore vulnerable when he was shot. The angle and configuration of Benton's wounds suggested he had turned to run away when he was shot. These circumstances are similar to *Ollens*, where evidence that the defendant attacked the victim from behind and inflicted multiple wounds supported a finding of premeditation, 107 Wn.2d at 853, and *Rehak*, where the victim was shot multiple times while he was in a nonconfrontational stance, 67 Wn. App. at 159.

In sum, the method of killing provides circumstantial evidence of premeditation. To the extent that the jury could infer Howard took advantage of Collins's distraction, there is an inference of stealth as well. Viewing the evidence in the light most favorable to the State as we must, we

conclude that there was sufficient evidence of premeditation to support Howard's convictions for first degree murder.

## II. LEGAL FINANCIAL OBLIGATIONS

Howard argues that the trial court improperly imposed the $200 criminal filing fee because Howard is indigent. The State concedes that this fee should be stricken from the judgment and sentence on remand. RCW 36.18.020(2)(h) prohibits the imposition of the criminal filing fee if a defendant is indigent as defined in RCW 10.101.010(3)(a)-(c). *See also State v. Ramirez*, 191 Wn.2d 732, 747, 426 P.3d 714 (2018). We accept the State's concession that the filing fee should be stricken, and we order the trial court to not impose the criminal filing fee upon resentencing.

## III. STATEMENT OF ADDITIONAL GROUNDS

First, Howard argues that it was improper for Sizemore to testify when the trial had already started without her. He does not explain why this was improper. He also claims the State threatened Sizemore in order to obtain her testimony. This argument relies on evidence outside the record, so we cannot consider it. *See State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995).

Second, Howard argues he was deprived of a fair trial. He believes his jury was biased against him, and one juror fell asleep. Howard does not point to any evidence of bias. Howard also does not identify which juror he claims fell asleep, and because no one moved to dismiss any juror for sleeping, this claim is not preserved for appeal. RAP 2.5(a).

No. 51822-8-II

## CONCLUSION

We affirm Howard's convictions for premeditated first degree murder, reverse his sentence, and remand for resentencing consistent with this opinion. The trial court must not impose the criminal filing fee upon resentencing.

Glasgow, J.

We concur:

, C.J.

, C.J.

Maxa, J.